**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT MCMILLEN,** *et al.***,** | : | |
| | : | **Case No. 2:13-CV-00738** |
| **Plaintiffs,** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **v.** | : | |
| | : | **Magistrate Judge Preston Deavers** |
| **RESURGENT CAPITAL SERVICES, L.P.,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

### I. INTRODUCTION

This matter is before the Court on the parties' cross-motions for summary judgment.

Plaintiffs Robert and Nancy McMillen (collectively, "Plaintiffs" or "the McMillens") seek

summary judgment on their claim under the Real Estate Settlement Procedures Act ("RESPA").

(Doc. 30).  Defendant Resurgent Capital Services, L.P. ("Resurgent" or "Defendant") seeks

summary judgment on the same claim.  (Doc. 29).  For the reasons set forth herein, this Court

finds that Defendant's Motion is **DENIED**; Plaintiffs' Motion also is **DENIED**.  In addition,

Plaintiff's Objections to the Magistrate Judge's September 12, 2014 Order denying their Motion

to Compel, (Doc. 20), is **MOOT**.

### II. BACKGROUND

Plaintiffs are the owners and obligors of a note and mortgage executed on June 30, 2005

for the purpose of financing residential property.  (Doc. 1, ¶13; *see also* Doc. 1-1, 1-2).

Defendant Resurgent became the loan servicer of the McMillen's loan, effective November 18,

2012.  Resurgent sent the McMillens a notice of servicing transfer on November 19, 2012

("Notice of Servicing Transfer").  The Notice of Servicing Transfer stated, in relevant part:

"Correspondence should be mailed to: Resurgent Mortgage Servicing P.O. Box 10826

Greenville, SC 29603-0826."  Several paragraphs later, the Notice also stated: "If you want to send a qualified written request regarding the servicing of your loan, it must be sent to P.O. Box 208, Greenville, SC 29602-0208."  (Pl. Ex. E, Doc. 30-5 at 1).

At some point, the McMillens became concerned about various charges, including late fees, inspection fees, property appraisal fees, forced placed insurance charges, legal fees, and corporate advanced charges, placed on the account, believing those charges were in error and not authorized under the note and mortgage.  (McMillen Aff., Doc. 30-1, at ¶ 9).

On or around June 20, 2013, Plaintiffs, through counsel, began sending correspondence to Resurgent seeking information about their account.  (Doc. 1, ¶ 17; Doc 1-3, 1-4).  Plaintiffs allege that the June 20, 2013 letter (the "June letter") constituted a "Qualified Written Request" ("QWR") under RESPA.  Plaintiffs sent the June Letter to P.O. Box 10497, Greenville, SC 29603.  In the June letter, the McMillens "dispute all late fees, charges, inspection fees, property appraisal fees, force placed insurance charges, legal fees, and corporate advances" related to their mortgage loan.  Further, Plaintiffs state their belief that their account is in error because "the balance due is erroneous due to excessive fees and interest."  Finally, in the June letter, Plaintiffs request the following information "about the fees, costs, and escrow accounting of their loan":

1.  The name, address, and telephone number of the owner of the note, plus the name of the master servicer of the note.

2.  The date that the current note holder acquired this mortgage note, and from whom it was acquired.

3.  The date your firm began servicing the loan.

4.  A complete payment history of how payments and charges were applied, including the amounts applied to principal, interest, escrow, and other charges.

5.  The current interest rate on this loan and an accounting of any adjustments.

6.  A statement of the amount necessary to reinstate this loan.

7. A complete copy of the loan closing documents, including a copy of the note and mortgage.

8. A copy of all appraisals, property inspections, and risk assessments completed for this account.

On July 2, 2013, Resurgent acknowledged receipt of Plaintiffs' June letter.  (Pl. Ex. G, Doc. 30-7).  It then responded to the June letter in a letter dated July 10, 2013.  (Pl. Ex. H, Doc. 30-8).  Resurgent's July 10, 2013 letter provided the balance due on the loan, the amount of the original loan, and a brief summary of the loan's history (the date of origination, amounts of the original loan, interest, and monthly payments, day of the month when payments are due, and the date since when the loan has been past due).  The letter also provided a list of enclosed documents.  Specifically, it stated:

> Enclosed are copies of the Assignment of Mortgage, Interest First Note, Mortgage, Loan Application, Settlement Statement, Notice of Servicing Transfer, Power of Attorney from Bank of America N.A., and a complete itemized account history from the date of this loan to the date of this letter.

Finally, the letter stated that if Resurgent "do[es] not receive additional information…within 30 days of the date this letter is received, then we will assume the dispute is resolved."  It then told Plaintiffs to contact customer service with any further questions, comments, or concerns.  Further correspondence between the parties transpired afterward, leading up to this action.

On July 25, 2013, the McMillens filed a Complaint in this Court against Resurgent, alleging violations of RESPA and the Truth-in-Lending Act ("TILA").  This Court dismissed Plaintiffs' TILA claim on July 8, 2014.  (Doc. 16).  Plaintiffs remaining claim alleges that by not properly responding to the June letter, which Plaintiffs claim is a QWR, Defendant is in violation of RESPA, 12 U.S.C. § 2605(e)(2).  Plaintiffs claim that, without accurate or detailed information concerning their loan, they have incurred the financial costs of retaining counsel to

prepare and mail the QWR and to review the correspondence received from Resurgent.  In addition, Plaintiffs claim they suffer from emotional distress caused by "the continued fear and uncertainty about the status of their loan and the errors in their account will result in the foreclosure and loss of their home."  (Doc. 30 at 3, citing McMillen Aff. at ¶ 12.)

Defendant now seeks summary judgment on Plaintiffs' RESPA claim.  (Doc. 29).  Likewise, Plaintiffs move this Court to grant summary judgment in their favor on their RESPA claim and set the case for trial as to the amount of damages.  (Doc. 30).

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides, in relevant part, that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56.  A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, (1986)).  The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  The suggestion of a mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment.  *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992).  Summary judgment is inappropriate, however, "if the dispute is about a material fact that is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must

4

prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). In evaluating such a motion, the evidence must be viewed in the light most favorable to the nonmoving party. *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). The standard of review for cross-motions for summary judgment "does not differ from the standard applied when a motion is filed by only one party to the litigation." *Sierra Brokerage Servs.*, 712 F.3d at 327.

## IV. ANALYSIS

The sole issue before this Court is whether Plaintiffs' correspondence to Resurgent triggered Resurgent's duty to respond under RESPA, 12 U.S.C. § 2605(e), and if so, whether Resurgent adequately responded.

### A. RESPA

As the Sixth Circuit has articulated, in enacting RESPA:

> Congress's intent was "to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country."

*Vega v. First Fed. Sav. & Loan Ass'n of Detroit*, 622 F.2d 918, 923 (6th Cir. 1980) (quoting 12 U.S.C. § 2601(a)). In 1990, the scope of the statute was expanded to encompass loan servicing. *See Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 665-66 (9th Cir. 2012) (citations omitted). Because RESPA is a remedial statute, it is construed broadly to effectuate its purposes. *Carter v. Welles–Bowen Realty, Inc.*, 553 F.3d 979, 985-86, n. 5 (6th Cir. 2009); *see also Medrano*, 704

F.3d at 665-66 ("RESPA's provisions relating to loan servicing procedures should be construed liberally to serve the statute's remedial purpose.") (citations omitted).

Two sections of RESPA are most relevant to the present matter.  First, RESPA provides certain requirements that a consumer's correspondence must meet to constitute a QWR:

> (B) Qualified written request. For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B) (2006).[1]  Second, upon receiving a QWR, RESPA places an obligation on the servicer to respond substantively.  At the time of the correspondence in the present matter, the governing provision stated:

> (2) Action with respect to inquiry. Not later than 60 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall—
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—
>
> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and

---

[1] At the time of the events at issue here, RESPA also required servicers to confirm receipt of the inquiry within 20 days of receipt of the correspondence.  *See* 12 U.S.C. § 2605(e)(1)(A) (2006).  This issue of whether or not Resurgent timely acknowledged receipt of Plaintiffs' June letter is not disputed here.

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or

(C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes—

(i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and

(ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 .S.C. § 2605(e)(2) (2006).

## B.    Parties' Arguments

### 1.    *Plaintiffs' Arguments*

Plaintiffs argue that Defendant Resurgent is liable under RESPA for failing to investigate and respond sufficiently to the McMillens' the June letter, which Plaintiffs assert was a QWR. Plaintiff contends that the June letter was a QWR because it provided "sufficient detail" concerning their notification to Resurgent that their account is in error and concerning the information they sought about their loan.  Specifically, Plaintiffs claim that the June letter:  (1) notified Resurgent that they were writing pursuant to RESPA and that the letter was a QWR; (2) stated Plaintiffs' belief that their account was in error and provided reasons for that belief; (3) requested "other specific information," including information about the owner of the note, information about the assignment of the note, the payment history detailing how charges were applied, a quote for the reinstatement cost on the loan, and copies of other documents related to the loan.   Plaintiffs further assert that Resurgent is liable under RESPA because it "did not correct any errors posed by the McMillens," "did not provide a reason why it could not answer their questions or provide the information they sought," and failed either to undertake a meaningful investigation or provide a complete response to Plaintiffs' inquiries.

2.    *Defendant's Arguments*

Defendant argues that it had no duty to respond to Plaintiffs' June letter because Plaintiffs did not send it to the address Resurgent exclusively designated for QWR's.  Defendant insists that "the majority of courts considering the question have concluded that if the servicer established a separate and exclusive address for receiving QWRs, a borrower's correspondence does not trigger the servicer's duty to respond unless and until the QWR is sent to the specified address" and that recent decisions, including those by Courts within this Circuit, follow the majority.

Defendant also insists that, even if the June letter constitutes a QWR, it provided a sufficient response because it "investigated the matter, provided the information requested, explained the account's status, invited further dialogue, and responded to follow-up inquiries from the McMillens explaining why the account was correct."  Defendant argues that, under *Hittle*, in which Judge Smith of the Southern District analyzed the identical purported QWR, the June letter "essentially disput[ed] everything," leaving Resurgent to "guess as to what error the McMillens alleged."  Plaintiffs cannot, Defendants insist, hold Resurgent liable for failing to respond to every conceivable problem with their loan when the purported QWR was "so broad as to be incoherent, so too was the McMillens' June Letter in this case."

Defendant further argues that RESPA only requires a servicer to produce documents related to servicing, which it did here.  Resurgent went beyond its duty under RESPA, Defendant claims, by also voluntarily producing documents that did not relate to servicing.  "By providing these documents," Defendant maintains, "Resurgent adequately responded to the June Letter and complied with RESPA.  Therefore, Resurgent is entitled to summary judgment in its favor."

Finally, Defendant insists that Plaintiffs suffered no "actual damages," as required under RESPA.

### C.     Defendant's Compliance with RESPA

*1.     Whether Plaintiffs' Correspondence was a QWR under RESPA*

A servicer's duties under RESPA are triggered only if: (1) the servicer receives a QWR; and (2) the written correspondence meets the statutory definition of a QWR.  12 U.S.C. § 2605(e)(1)(A).  Under RESPA, for a communication from borrower to servicer to count as a QWR for purposes of § 2605, it must be written, and not be a mere notice on a payment medium supplied by the servicer. 12 U.S.C. § 2605(e)(1)(B).  In addition, the communication must enable the servicer to identify the name and account of the borrower.  12 U.S.C. § 2605(e)(1)(B)(i).  It must also give reasons, to the extent applicable, that the borrower believes the account to be in error or provide the servicer with sufficient detail to determine what information is being sought. 12 U.S.C. § 2605(e)(1)(B)(ii); *see also, e.g.*, *Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 873 (W.D. Mich. 2014) ("To be a QWR, the correspondence must (1) be written; (2) not be included with a payment; (3) include the name and account number of the borrower, or a way to enable the servicer to identify the account; and (4) include a statement of the reasons the borrower believes the account to be in error, or include sufficient detail to enable the servicer to determine what information is being sought.").

Here, there is no reasonable dispute that the June letter is a QWR: it designated itself as a QWR; stated the name and account of the borrower, thereby enabling the servicer to identify the same; and satisfied the disjunctive option of § 2605(e)(1)(B)(ii) by sufficiently detailing for the servicer eight types of information sought in its numbered paragraphs.  *See Hittle v. Residential Funding Corp.*, No. 2:13-CV-353, 2014 WL 3845802, at *5 (S.D. Ohio Aug. 5, 2014) (finding

that there was "no reasonable dispute" that the letter at issue was a valid QWR where it denominated itself as a QWR, enabled the servicer to identify the name and account of the borrower, and provided sufficient detail of the type of information sought).

> ### 2.      Whether a Response to the QWR was Necessary

Because the June letter was a QWR under RESPA, the next question for this Court is whether Resurgent was under an obligation to respond to it.

At the time when Plaintiffs sent, and Defendant responded to, Plaintiffs' QWR, a regulation issued by Department of Housing and Urban Development ("HUD") was in place that provided guidance relating to the duty of loan servicers to respond to borrower inquiries under § 2605(e).  *See* 24 C.F.R. § 3500.21(e).  After repeating nearly verbatim the statutory definition of a QWR, § 3500.21(e)(1) then went on to allow servicers to designate an address at which to receive QWR's, an allowance not enumerated in the statute.  Specifically, the regulation provided that: "[A] servicer *may* establish a separate and exclusive office and address for the receipt and handling of qualified written requests."  24 C.F.R. § 3500.21(e)(1) (emphasis added).[2]  Courts are split on whether the language adds the additional substantive requirement that a written request be sent to a designated location before qualifying as a QWR and, therefore, triggering the servicer's obligation to respond.  The Sixth Circuit has not addressed squarely this question of whether 24 C.F.R. § 3500.21 adds a substantive requirement to RESPA.

Currently, it appears that a majority of reviewing courts have concluded that, under § 3500.21(e)(1), "the [servicer's] response obligation under RESPA is *only* triggered when the QWR is sent to the designated address."  *Jestes v. Saxon Mortg. Servs.,* 2:11-cv-59, 2014 WL

---

[2] The text of 24 C.F.R. § 3500.21(e)(1) is available in older editions of the Code of Federal Regulations and electronically in the Federal Register.  *See, e.g.*, Real Estate Settlement Procedures Act: Streamlining Final Rule, 61 Fed.Reg. 13,232, 13,250 (effective April 25, 1996).  Similarly, the text of 12 C.F.R. § 1024.21(e)(1) is available in older editions of the Code of Federal Regulations and electronically in the Federal Register.  *See e.g.*, Real Estate Settlement Procedures Act (Regulation X), 76 Fed.Reg. 78,978, 78,997 (interim effective date Dec. 30, 2011).

1847806 (M.D. Tenn. May 8, 2014) (emphasis added) (collecting cases); *see also, e.g.*, *Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 875 (W.D. Mich. 2014); *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148–49 (10th Cir.2013); *Roth v. CitiMortgage Inc.,* No. 12–CV–2446, 2013 WL 5205775 (E.D.N.Y. Sept. 11, 2013); *Quenroe v. Mortg. Elec. Registration Sys., Inc.,* No. CIV. 09–3439, 2012 WL 425175 (D. Minn. Feb. 9, 2012); *Steele v. Green Tree Servicing, LLC,* No. 3:09–CV–603–D, 2010 WL 3565415 (N.D. Tex. Sept. 7, 2010) *aff'd sub nom. Steele v. Green Tree Servicing, L.L.C.,* 453 Fed.Appx. 473 (5th Cir. 2011); *Daddabbo v. Countrywide Home Loans, Inc.,* No. C09–1417, 2010 WL 4262027 (W.D. Wash. Oct. 27, 2010); *Lemieux v. Litton Loan Servicing, LP,* 2:09–CV–2816, 2009 WL 5206641 (E.D. Cal. Dec. 22, 2009); *Catalan v. RBC Mortg. Co.,* No. 05 C 6920, 2008 WL 2741159 (N.D. Ill. July 8, 2008).

Several courts have decided otherwise, however, holding that while the regulation allows a mortgage servicer to establish a separate and exclusive address, it does not require a borrower to send QWRs to that address. *See, e.g.*, *Benner v. Bank of Am.*, 917 F.Supp. 2d 338 (E.D. Pa. 2013); *Vought v. Bank of Am., NA*, No. 10-2052, 2010 WL 4683599, at *5 (C.D. Ill. Sept. 24, 2010) *report and recommendation adopted sub nom. Vought v. Bank of Am., N.A.*, No. 10-CV-2052, 2010 WL 4683596 (C.D. Ill. Oct. 27, 2010).  Under the rationale of the minority rule, the crucial inquiry is whether the mortgage servicer received the borrower's correspondence, because the statutory language indicates that receipt triggers the servicer's duty to respond under RESPA.  *See Benner*, 917 F.Supp. 2d at 365; *Vought*, 2010 WL 4683599 at *5.

In this case, the November 19, 2012 Notice of Servicing Transfer sent from Resurgent to the McMillens first stated: "Correspondence should be mailed to: Resurgent Mortgage Servicing P.O. Box 10826 Greenville, SC 29603-0826."  (Pl. Ex. E, Doc. 30-5 at 1).  Shortly thereafter, however, the Notice also specified: "If you want to send a qualified written request regarding the

servicing of your loan, it must be sent to P.O. Box 208, Greenville, SC 29602-0208." (*Id*.). The Notice demonstrates that Resurgent in fact did establish a separate and exclusive address for the receipt of QWR's, and this separate address was communicated to Plaintiffs. *See Hittle v. Residential Funding Corp.*, No. 2:13-CV-353, 2014 WL 3845802, at *6 (S.D. Ohio Aug. 5, 2014) (noting that "the designation of a QWR-receiving address was, under the regulations relevant at the time, to be included in the Notice of Transfer or 'separately delivered'" by first class mail) (quoting 24 C.F.R. § 3500.21(e)(1) and 12 C.F.R. § 1024.21(e)(1)).

It is undisputed that Plaintiffs sent their QWR to Resurgent's address for general correspondence – that is, the first address listed in the Notice of Servicing Transfer letter (P.O. Box 10826, Greenville, SC 29603-0826) – and not to the designated QWR address listed shortly thereafter (P.O. Box 208, Greenville, SC 29602-0208). Because no written request was sent to the designated address, Defendant argues that Plaintiffs' request did not trigger any duties under RESPA. Plaintiffs, on the other hand, argue that this fact is not dispositive because: (1) this did not prevent Defendant from receiving the QWR, as evidenced by the fact that Defendant responded to it; (2) Defendant waived the argument that the QWR was sent to the wrong address by responding to it; and (3) an agency's interpretation that a regulation adds a substantive requirement to RESPA is not entitled to deference and is "manifestly contrary" to Congressional intent.

The Court agrees with the minority view on this issue and therefore finds that Plaintiffs' June letter was in fact a QWR and triggered Defendant's duties under RESPA.

In analyzing the language of a statute, courts give the words their ordinary meaning unless the context suggests otherwise. *Deutsche Bank Nat. Trust Co. v. Tucker*, 621 F.3d 460, 462 (6th Cir. 2010); *see also Ortega v. Holder,* 592 F.3d 738, 743 (7th Cir. 2010). If the plain

language of the statute is clear, the court's work is done.  *Ortega*, 592 F.3d at 743.  In interpreting the language of a statute, however, courts must consider not only the words of the statute, but also the statute's structure.  *Id.*  "Context, not just literal text, will often lead the court to Congress' intent in respect to a particular statute."  *Id.*  (quoting *City of Rancho Palos Verdes v. Abrams,* 544 U.S. 113, 127 (2005) (Breyer, J., concurring)).

First, neither the plain language of 12 U.S.C. § 2605(e) nor 24 C.F.R. § 3500.21(e)(1), *supra,* require a borrower to send his requests to a loan servicer's designated address; § 3500.21 simply allows a loan servicer to establish such a place.  What the statute does require, however, is that the loan servicer receive the borrower's request for information.  The plain language of § 2605(e)(2) makes clear that a defendant's RESPA obligations are triggered by "the *receipt* from any borrower" of a QWR.  (emphasis added).  Further, as the *Vought* court recognized, "the statutory definition of a QWR is not particularly technical," and "makes no mention of any requirement regarding how borrowers must send their QWRs."  *Vought*, 2010 WL 4683599 at *5 (citing 12 U.S.C. § 2605(e)(1)(B)). Therefore, the plain language, context, and structure of the statute, indicate that receipt of a QWR triggers a loan servicer's RESPA obligations.  *Id.*

Moreover, crucial to any RESPA analysis is the acknowledgement that it is a remedial statute and that it is to be construed broadly.  Reading § 3500.21(e)(1), a regulation that states that loan servicers "*may* establish a separate and exclusive office and address," as adding to the statute a substantive, affirmative requirement for borrowers, especially when the plain language does not indicate that such a reading is appropriate or necessary, is contradictory to the general rule requiring broad statutory construction.  *See Benner*, 917 F. Supp. 2d at 364-65.  Under a broad reading of the plain language of the statute, it is clear that RESPA is focused on the servicer's receipt of the borrower's QWR.

In the present case, it is undisputed that Defendant in fact received Plaintiffs' QWR (the June letter), even though it was sent to Resurgent's general correspondence address. This is evidenced by Defendant's letter notifying Plaintiffs of receipt of the letter, and by Defendant's response. Defendant's responsive correspondence confirms that Defendant was aware of Plaintiffs' requests for information. As discussed *supra*, the statute requires a loan servicer to receive the QWR for its duties under RESPA to be triggered. Here, Resurgent received Plaintiffs' QWR and thus its RESPA duties were triggered.

### 3. Whether Resurgent's Response was Sufficient under RESPA

Because this Court finds Defendant had a duty to respond to Plaintiffs' QWR under RESPA, the next inquiry is whether its response was sufficient under the statute.

RESPA provides three ways in which a servicer can validly respond to a QWR. *See* 12 U.S.C. § 2605(e)(2). First, a servicer can make corrections to the account. 12 U.S.C. § 2605(e)(2)(A). Second, a servicer can, after an investigation, explain or clarify why the account is already correct. 12 U.S.C. § 2605(e)(2)(B). Or, third, a servicer can, following an investigation, provide the borrower with a written explanation or clarification that includes information requested and an explanation of why the information not provided cannot be obtained or provided by the servicer. 12 U.S.C. § 2605(e)(2)(C).

In the case *sub judice*, Defendant does not specifically identify which of the three statutory provisions its response falls under, but instead generally asserts that it "investigated the matter, provided the information, explained the account's status, invited further dialogue, and responded to follow-up inquiries from the McMillens explaining why the account was correct." (Doc. 29 at 8). From Defendant's phrasing, it appears that Resurgent chose option three, under 12 U.S.C. § 2605(e)(2)(C), which requires that, after an investigation, the servicer "provide the

borrower with a written explanation or clarification that includes— (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." Plaintiffs also assert that Defendant's response should be analyzed under § 2605(e)(2)(C).

Defendant relies heavily on *Hittle*, in which Judge Smith analyzed a QWR identical to the QWR sent by Plaintiffs in the present case, as support for its argument that the McMillens' QWR "was so broad as to be incoherent."  According to Defendant, the result of an overbroad QWR is that "the servicer cannot meaningfully respond…[a]ll that a servicer can do in that situation is respond and invite a further dialogue."  Such a response is what Defendant claims it provided here, and it argues that such a response was sufficient under RESPA.

Plaintiff, on the other hand, maintains that Defendant's response was inadequate because Resurgent performed no investigation, the response does not provide a written explanation of the reasons Resurgent believes the Plaintiffs' account was correct, and Resurgent failed to provide specific information Plaintiffs' QWR requested, such as a reinstatement quote.

Defendant correctly notes that, in *Hittle*, Judge Smith found that the QWR quite was overbroad because it "did not coherently set forth the reasons that the [plaintiffs] believed their account to be in error" and appeared to dispute all charges.  *Hittle*, 2014 WL 3845802 at *9-10. Defendant's argument seems incorrectly to conclude, however, that this factor determined the outcome of the case.  It was not the overly broad nature of the plaintiffs' QWR alone that led to Judge Smith's finding that Ocwen, the loan servicer, had not violated RESPA.  Rather, in his analysis of whether the loan servicer adequately responded under § 2605(e)(2)(C), (the 'provide requested information' response option), Judge Smith found it of crucial importance that the

Ocwen "fairly met the substance of these requests and explained why it could offer no more than it did."  The court concluded that, despite the QWR's breadth, "[t]he Hittles did cogently request information" and thus, Ocwen was obligated respond under RESPA.  The court merely pointed the QWR's breadth to clarify that, while RESPA required the loan servicer fairly to meet the substance of the QWR, Ocwen was not "compelled to guess what the Hittles believed were the errors in the account or to dream-up and refute hypothetical reasons for the Hittles' vague discontent."

In its response, which Judge Smith determined "fairly met the substance of the QWR," Ocwen included in its letter specific responses addressing each of the eight categories of requested information in the QWR, as opposed to a generic, form response.  The letter also stated clearly the reason for which it did not provide more extensive information than what was included.  In *Hittle*, Judge Smith then juxtaposed the loan servicer Ocwen's response to loan servicer's response in *Marais*.  This comparison is helpful in the present case:

> In the *Marais* decision, this Court held liable a servicer whose response to a QWR consisted of an utterly generic form letter and attached loan documents. 2014 U.S. Dist. LEXIS 76123, *25–31, 2014 WL 2515474. The reasoning in *Marais* was that the lender's response evidenced no investigation of the concerns raised by the borrower's QWR and did nothing to clarify or explain the concerns raised in the QWR. *Id.* In this case, however, [loan servicer] Ocwen's response shows that someone at Ocwen investigated the Hittles' requests, provided responsive information, and clearly explained its response to each numbered paragraph. (Doc. 7, Ex. H, Ocwen–Doucet Ltr. 5/1/13 at 1–2). This complies with the investigation and explanation requirements of 12 U.S.C. § 2605(e)(2)(C). In addition, Ocwen's response explains why it could not cogently respond further— that the QWR was so incredibly broad that there was no way to determine what error was being alleged. *See* 12 U.S.C. § 2605(e)(2)(C) (i). This constitutes a clear, good-faith, and successful effort to meet the substance of the Hittles' QWR and entitles Ocwen to summary judgment.
>
> This Court has taken a dim view of generic form responses by servicers to QWRs in light of the statute-imposed obligations to investigate, explain, and clarify (or, if appropriate, correct the account) in response to concerns raised by a borrower. *Marais*, 2014 U.S. Dist. LEXIS 76123, 2014 WL 2515474 *in passim*. Now this

> Court elucidates the previously-unwritten corollary: A borrower cannot hold a servicer liable for failing to completely respond to every possible interpretation of a generic and vague QWR when the servicer has responded with a good faith investigation and explanation. RESPA exists to prevent abuse of borrowers by servicers—not to enable abuse of servicers by borrowers.

*Hittle*, 2014 WL 3845802 at *12.

In this case, the QWR is not incomprehensible; it requests eight specific categories of information related to Plaintiffs' account.  Under § 2605(e)(2)(C), a Defendant's duty was twofold: first, to conduct an investigation; and second, after the investigation, to provide the borrower with a written explanation or clarification that includes a statement of the reasons for which the servicer believes the account is correct and the name and telephone number of an employee, office, or department who can assist the borrower.

This Court finds that a genuine issue of material fact as to whether Defendant actually conducted an investigation in this case.  Plaintiff asserts that Defendant conducted no investigation, pointing only to Defendant's responses to interrogatories in which is claimed it "reviewed" its records and forwarded the documents referenced in response.  Defendant likewise provides no evidence that it conducted an investigation as required under RESPA, only reasserting that it "reviewed" its records.  Further, this Court finds that genuine issues of material fact exist as to whether Defendant's response was adequate.

### D.    Damages

Recovery under RESPA requires more than establishing a violation; a plaintiff also must suffer actual, demonstrable damages that occurred "as a result of" that specific violation.  *See Tsakanikas v. JP Morgan Chase Bank N.A.*, No. 2:11-CV-888, 2012 WL 6042836, at *4 (S.D. Ohio Dec. 4, 2012); *see also Eichholz v. Wells Fargo Bank, NA,* No. 10–cv–13622, 2011 WL 5375375, at *5 (E.D. Mich. Nov.7, 2011) (quoting 12 U.S.C. § 2605(f)(1)(A)); *accord Webb v.*

*Chase Manhattan Mortg. Corp.,* No. 2:05–CV–0548, 2008 WL 2230696, at *14 (S.D. Ohio May 28, 2008).  Plaintiff's Complaint pled two categories of damages to be determined at trial:  (1) the costs associated with preparing and submitting the QWR, such as time and effort spent and expenses accrued, including "preparing, photocopying, sending the QWR via certified mail, and obtaining all copies of the correspondence[;]" and (2) emotional distress due to anxiety related to "their actual loan balance and whether foreclosure would occur."  (Doc. 1, ¶¶ 39- 41).

>    1.    *Damages for Costs Associated with Preparing and Submitting the QWR*

Defendant argues that Plaintiffs are not entitled to the costs of preparing its QWR because Resurgent sufficiently responded to it, and thus cannot incur liability under RESPA.  This argument is dependent on whether this Court determines that the Defendant did in fact violate its obligations under RESPA, discussed *supra*.  Obviously, if the Court found that there was no RESPA violation, the McMillens would not be entitled to any damages at all, let alone damages for the costs of preparing its QWR.  This is to say, Defendant effectively does not present an argument as to why the costs of preparing the QWR are not properly considered "actual damages" in this case.

In denying Defendant's motion to dismiss on Plaintiffs' RESPA claim, this Court determined that Plaintiffs' claim of damages for costs associated with preparing the QWR could go forward.  In its motion requesting summary judgment, Defendant presents no evidence or argument for this Court now to dismiss this portion of Plaintiffs' damages claim.  Therefore, Defendant's motion for summary judgment on these grounds is insufficiently supported and must fail.

### 2.     *Emotional Distress Damages*

Defendant also argues that Plaintiffs cannot succeed on their claim of emotional distress damages because the claim was not pled with sufficient specificity, and any emotional distress Plaintiffs suffered is the result of their failure to comply with the terms of the note and mortgage, rather than any alleged RESPA violation by Resurgent.

Plaintiffs respond that there is a genuine issue of material fact for trial as to the amount of their damages.  In support, Plaintiffs' cite to Robert McMillen's affidavit, which avers the following as it relates to emotional distress damages:

> 12. Due to the actions of Defendant, my wife and I suffer, and continue to suffer, mental anguish due to my worries and concerns that the errors in my loan as a result of Defendant's actions will result in foreclosure and the loss of my home.

(Doc. 30-1 at 2, ¶ 12).

Courts are split on whether RESPA allows recovery of emotional distress damages. *Compare Rowlings,* 64 F.Supp.2d at 1166-67 (citing cases holding that emotional distress damages are available under RESPA) *with Katz v. Dime Sav. Bank, FSB,* 992 F.Supp. 250, 255-56 (W.D.N.Y.1997) (holding that non-pecuniary damages are not available under RESPA); *see also Tsakanikas*, 2012 WL 6042836 at *4 (recognizing this split amongst courts).  In *Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012), however, the Sixth Circuit found that there was a genuine issue of material fact as to whether the plaintiff suffered damages as a result of the defendant's RESPA violation where the plaintiff alleged financial and emotional damages arising from the defendant's RESPA violation and provided an affidavit in which she "averred that she suffered stress, mental anguish, embarrassment, and humiliation, because of [defendant's] violation, and not merely because of the foreclosure." *Id*. (internal quotations omitted).  In a corresponding footnote, the court stated:

"We find nothing in the text of § 2605(f), or in RESPA more broadly, to preclude 'actual damages' from including emotional damages, provided that they are adequately proven." *Id.* at n. 6.  Therefore, under *Houston*, this Court finds that RESPA § 2605(f) does not preclude "actual damages" from including emotional distress damages where such damages are adequately proven. *Id.*

To support its motion for summary judgment on Plaintiffs' claim for emotional distress damages, Defendant argues only that Plaintiffs' claim is not pled adequately and that any emotional distress was not caused by Defendant's violation of RESPA, although no evidence is put forward to support the latter claim.  Viewing the facts in the light most favorable to Plaintiffs, the nonmovant on this issue, Plaintiffs have adduced record evidence supporting their claim of mental anguish that a jury could believe is a result of Defendant's actions sufficient to demonstrate the existence of a genuine issue of material fact on the issue of emotional distress damages.  *See Houston v. U.S. Bank Home Mortgage Wisconsin Servicing*, 505 F. App'x 543, 548 (6th Cir. 2012) (holding that a genuine issue of material fact existed, warranting remand, based on plaintiff's allegations that experienced financial and emotional damages arising from the defendant's RESPA violation and a paragraph in her affidavit averring that she suffered "stress, mental anguish, embarrassment, and humiliation," because of the defendant's violation). Therefore, this Court denies Defendant's motion for summary judgment on this basis.

## IV. CONCLUSION

For the reasons set forth herein, this Court finds that Defendant's Motion for Summary Judgment is **DENIED**; Plaintiffs' Motion for Summary Judgment also is **DENIED**.  In addition,

Plaintiff's Objections to the Magistrate Judge's September 12, 2014 Order denying their Motion to Compel, (Doc. 20), is **MOOT**.

 **IT IS SO ORDERED.**


       __s/Algenon L. Marbley__
       **ALGENON L. MARBLEY**
       **UNITED STATES DISTRICT JUDGE**

**DATE:  September 11, 2015**